UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MARCUCILLI,

        Plaintiff,                  CIVIL ACTION NO. 04-CV-40244-FL

vs.

                                    DISTRICT JUDGE PAUL V. GADOLA

AMERICAN AIRLINES, INC.,      MAGISTRATE JUDGE MONA K. MAJZOUB
TRANSPORT WORKERS UNION
LOCAL 521, TRANSPORT WORKERS
UNION OF AMERICA– AIR TRANSPORT
DIVISON,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION**: Defendants' Motions to Dismiss and for Summary Judgment should be **DENIED**.

\*\*\*

Plaintiff filed the instant complaint on August 24, 2004, pursuant to the Railway Labor Act (RLA), 45 U.S.C. § 153 *et. seq.* Plaintiff was previously employed by Trans World Airlines (TWA) until April 10, 2001, at which time TWA's assets were purchased by American Airlines (AA). As a result of the acquisition, Plaintiff became employed by AA and was represented by the Transport Workers Union (TWU) which union serves as the collective bargaining agent for certain groups of AA employees. Incident to the acquisition, the parties submitted to arbitration the issue of seniority integration of the former TWA employees who were joining the ranks of the AA employees. On April 29, 2002, arbitrator Richard Kasher issued an award addressing the "Integration of Seniority Lists" between the TWA and AA employees. Kasher's Award also provided for the establishment of a Dispute Resolution Committee (DRC) "for hearing and resolving any disputes regarding the proper interpretation and

implementation of [Kasher's] Award." By agreement of the parties, Kasher was selected to serve as the DRC.

In the instant complaint, Plaintiff alleges that AA is failing to properly apply the seniority integration formula as set forth in the Kasher Award and subsequent DRC rulings and that such failure constitutes a breach of the collective bargaining agreement (CBA). Plaintiff also alleges that TWU, his collective bargaining agent, breached its duty to fairly represent him in his grievance against AA based on the alleged breach of the CBA. Both Defendants contend that there has been no breach of the CBA such that Plaintiff's claims should fail.

Plaintiff asserts that under Kasher's original award dated April 29, 2002 former TWA employees were to receive a seniority date that varied depending on the employee's current location of employment (i.e., St. Louis, Detroit, New York, etc.). For example, Plaintiff contends that former TWA employees at the St. Louis station were to receive 100% of their TWA seniority while former TWA employees in Detroit were to receive only 25% of their TWA seniority. Yet at other select cities former TWA employees were to receive a seniority date of April 10, 2001 (4/10/2001). Plaintiff contends that at the time of the acquisition, an employee in St. Louis should have received 100% of his TWA seniority and that same employee should be able to retain his 100% seniority award for purposes of bumping into other stations or cities.

In this case, Plaintiff was employed at the St. Louis facility which was designated as a 100% seniority station for former TWA employees. Due to a reduction in force, Plaintiff opted to transfer to Detroit which was designated as a 25% seniority station for former TWA employees. Plaintiff now claims, however, that under the original Kasher Award and subsequent DRC rulings, he was entitled to retain his 100% seniority after transferring to Detroit. AA contends that Plaintiff was not entitled to retain his 100% seniority but instead must be readjusted to 25% of his TWA seniority because Detroit

was designated a 25% station.

In December 2003, Plaintiff filed a grievance protesting AA's interpretation of Kasher's seniority integration award. AA denied Plaintiff's grievance and concluded that:

> As indicated in the Kasher Seniority Integration decision in which you reference, former TWA employees exercising the right to displace on the system, will utilize the seniority credit of 25%, 100% or 4/10/01 of the station they are electing to displace into. You elected to displace into DTW which is a 25% station. [] In light of the above, your grievance is respectfully denied.

(Defendant TWU's Exhibit H). After exhausting the administrative grievance appeal process, Plaintiff requested that TWU arbitrate his grievance. In a letter dated April 4, 2004 the union "informed the Plaintiff that another grievance was pending where this exact issue was being arbitrated and it would review [Plaintiff's] grievance once that case was decided." (Defendant TWU's Brief in Support of Motion to Dismiss and for Summary Judgment, pg. 1). The other grievance referred to by TWU was brought by former TWA employee Mark Clover. Like Plaintiff, Clover worked at the St. Louis station where he exercised 100% of his TWA seniority. Also like Plaintiff, Clover later opted to "bump the system" and relocate to New York's JFK airport. Because JFK was designated as a 25% station under the original Kasher Award, AA adjusted his seniority to 25% of his former TWA seniority.

Clover filed a grievance and claimed that under the Kasher Award and DRC rulings, "former TWA employees laid off in St. Louis have the right to bump using their 'exit' seniority." (Defendant TWU's Exhibit K, Arbitration Decision of John Barnard, pg. 5). Ultimately, Defendant TWU presented Clover's grievance for arbitration before John Barnard who, on August 4, 2004, issued an award and concluded that Clover

> would hold 25% seniority at the JFK location under the 25% formula, the station where he exercised his occupational seniority. He cannot retain 100% seniority at a 25% location. Such would have provided Clover with an unfair advantage over other former TWA employees at JFK who may have more seniority than Clover, except for the fact that

-3-

they were working at JFK at the time of the Kasher decision.

(Defendant TWU's Exhibit K, Barnard Award, pg. 9-10). Defendants maintain that the Barnard Award further confirms their position that AA properly interpreted and applied the Kasher Award such that Plaintiff's claims against Defendants must fail. Accordingly, Defendants move for dismissal and for summary judgment. Plaintiff claims, however, that arbitrator Barnard was without jurisdiction to resolve disputes involving the interpretation of the Kasher Award such that Barnard's Award is not controlling to the instant dispute. Plaintiff asserts that the Kasher Award and DRC rulings demonstrate that Defendant AA breached the CBA and Defendant TWU breached its duty to fairly represent Plaintiff in his grievance against AA.

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative

-4-

evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

## **ANALYSIS AND DISCUSSION**

As an initial matter, Defendants challenge the jurisdiction of this Court to review the instant matter. Under the Railway Labor Act, federal courts generally do not have jurisdiction over 'minor' disputes arising out of grievances or the interpretation of collective bargaining agreements as those disputes fall within the exclusive jurisdiction of the National Adjustment Board. 45 U.S.C. §§ 151a and 184; *see also Consolidated Rail Corp. V. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303-04 (1989); *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994)(A minor dispute "must be resolved only through the mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions."); *Local Union No. 2000, Int'l Brotherhood of Teamsters, AFL-CIO v. Northwest Airlines, Inc.*, 21 F. Supp.2d 751, 754 (E.D. Mich. 1998)(stating that "minor disputes involve grievances or the interpretation of collective bargaining agreements"); *Airline Prof. Assoc of Int'l Brotherhood of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d at 1029 (6th Cir. 2001)("the dispute was a minor one, and the district court properly dismissed the case for lack of subject matter jurisdiction"). Here, Defendants assert that Plaintiff's claims, if any, are minor such that the

Court lacks subject matter jurisdiction. This Court disagrees.

An exception to the general rule that federal courts lack subject matter jurisdiction over minor disputes arises in a hybrid claim brought under § 301 of the Labor Management Relations Act (LMRA). In order to succeed on such a hybrid claim, a plaintiff must demonstrate not only a breach of the collective bargaining agreement but also the union's breach of its duty to fairly represent the plaintiff. *Bagsby v. Lewis Bros. Inc. Of Tennessee*, 820 F.2d 799 (6th Cir. 1987)(citing *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570-51 (1976)). Here, Plaintiff has plead facts which, if proven, state the component claims of a hybrid action under § 301 of LMRA. Thus, Plaintiff's instant hybrid claim falls within the jurisdiction of this Court. *Kelly v. Burlington N.R. Co.*, 896 F.2d 1194 (9th Cir. 1990)(recognizing hybrid claims under the RLA).

Next, Defendants contend that Plaintiff's claim must fail based on arbitrator Barnard's Award that dealt with the exact same issue presented here. Plaintiff responds, however, that arbitrator Barnard was without jurisdiction to hear Clover's grievance because the parties had previously agreed that Kasher would serve as the DRC "for hearing and resolving any disputes regarding the proper interpretation and implementation of [Kasher's] Award". For the following reasons, this Court concludes that arbitrator Barnard was without jurisdiction to hear Clover's grievance such that the Barnard Award is not binding for purposes of judicial review.

Generally, under the Railway Labor Act, courts have only a limited basis for reviewing arbitration awards. *See* 45 U.S.C. § 153 First (q); *Union Pac. R. Co. V. Sheehan*, 439 U.S. 89, 94 (1978). Under § 153 First (q), there are only three bases upon which an arbitration award may be overturned: (1) failure of the arbitrator to comply with the Railway Labor Act; (2) an arbitrator exceeded his jurisdiction; or (3) fraud or corruption. *Union Pac.*, 439 U.S. at 93. In this case, Plaintiff asserts that arbitrator Barnard had no jurisdiction to hear Clover's grievance. This Court agrees.

Following the acquisition of TWA's assets by AA, all parties agreed to submit to arbitrator Kasher the issues involved with the seniority integration of TWA's and AA's employees. In Kasher's original award, he directed the parties to establish a Dispute Resolution Committee (DRC) for the purpose of "hearing and resolving any disputes regarding the proper interpretation and implementation of [Kasher's] Award". The parties elected Kasher to serve as the DRC and therefore the parties were subsequently bound to submit "any disputes regarding the proper interpretation and implementation of [Kasher's] Award." Inexplicably, and in direct contradiction to the parties' agreement, Defendant TWU sought to arbitrate Mark Clover's grievance before Barnard. The Court cannot reconcile TWU's decision to arbitrate Mark Clover's grievance with arbitrator Barnard where it previously agreed that "any dispute regarding the proper interpretation and implementation of [Kasher's] Award" would be submitted to the DRC. Pursuant to the parties' previous agreement, arbitrator Barnard lacked any contractual jurisdiction to hear and determine Clover's grievance.

Defendant AA also objected to Barnard's jurisdiction to hear and determine Clover's grievance. In its brief submitted to arbitrator Barnard, Defendant AA asserted that:

> In reviewing the Kasher decision, there is the creation of the Dispute Resolution Committee [DRC], the proper forum for interpretation [sic] questions such as this. The Union in this instance could have appealed this to the DRC, and in reading the opinions, this issue has already been dealt with. [] As such, the Board lacks jurisdiction in this instance.

(Defendant AA's Brief in Support of Motion for Summary Judgment, Exhibit C, Arbitration Award of Barnard). Barnard failed to mention or resolve the jurisdictional dispute raised by AA. During the hearing on this matter, the Court questioned Defense Counsel for AA as to their previous objection to Barnard's jurisdiction. In response, counsel for AA asserted that "Plaintiff does not have the standing to raise the jurisdiction in the Barnard Award because he's not Mr. Clover, TWU hasn't raised it, and American hasn't pursued it." (TR 27, Hearing on July 13, 2005). Defendant AA's vague argument

based on standing is without merit for the simple reason that the Court is given the authority to vacate an arbitration award issued without jurisdiction. Accordingly, the Court declines to accept the Barnard Award as controlling in the instant matter.

Now, the Court considers the merits of Defendants' Motions for Summary Judgment. In its motion, Defendant AA contends that it properly interpreted and applied the Kasher Award and DRC rulings and there is no genuine issue of material fact relating to Plaintiff's claims that it breached the CBA. Plaintiff argues, however, that Defendant AA breached the CBA by failing to properly calculate the seniority of former TWA employees and also by 'endlisting' former TWA employees behind the AA employees hired after the merger and acquisition. These allegations, if true, would constitute a breach of the CBA.[1] To support his allegations of endlisting, Plaintiff submits a seniority list on which his seniority date is recorded as 4/10/2001 at the Detroit station (Plaintiff's Answer to Defendant American Airlines Motion for Summary Judgment, Exhibit 10). Plaintiff is correct in pointing out that a 4/10/2001 seniority date does not comport with any of Kasher's formulas as set forth in his Award and subsequent DRC rulings. Defendant has not provided any response addressing this issue. Therefore, at a minimum, Plaintiff has demonstrated a genuine issue of material fact as to whether Defendant AA breached the CBA by 'endlisting' former TWA employees behind those AA employees hired after 3/1/2001.

Additionally, Plaintiff has sought discovery relating to the issue of endlisting which discovery has thus far been denied and opposed by Defendants. Generally, summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery. *Vance v. United States*, 90 F.3d 1145

---

[1] DRC ruling No. 5 provides that "[t]he AA employees hired after 3/1/2001 shall be *blended* with the former TWA LLC employees according to the AA employees' occupational seniority" (emphasis added). Plaintiff alleges that Defendant AA violated DRC ruling No. 5 by 'endlisting' former TWA employees behind those AA employees hired after 3/1/2001.

(6th Cir. 1996)(citing *White's Landing Fisheries, Inc. V. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994)). In these circumstances, the Court is convinced that Plaintiff should be given an opportunity to conduct discovery relating to the issue of 'endlisting' before considering Defendant AA's dispositive motion on the same. Accordingly, the Court recommends that Defendant AA's Motion for Summary Judgment be **DENIED** as to Plaintiff's claim that AA breached the CBA by 'endlisting' former TWA employees behind those AA employees hired after 3/1/2001.

Next, the Court considers whether Defendant AA breached the CBA by improperly calculating Plaintiff's seniority where Plaintiff transferred from a 100% station to a 25% station. The crux of this issue is whether Plaintiff should have carried his 100% 'exit' seniority from St. Louis or should have received an 'entrance' seniority of only 25% at the Detroit station. Although Kasher's original award did not specifically address this issue, it was subsequently raised and addressed by Kasher in DRC rulings Nos. 5 and 19. DRC ruling No. 5 provides that:

> Once a junior employee at a location is given a furlough notice, he has the opportunity to displace junior employees on a systemwide basis as identified by the juniority list. Operation of the juniority list is intended to identify those junior employees systemwide who can be displaced by the furloughed employee through normal operation of occupational seniority. However, because former TWA employees' occupational seniority varies from location to location (i.e., 4/10/2001 and 25% and 100%), the juniority list must be constructed to account for this fact.
>
> In recognition of the above problems, the 'juniority' list shall be constructed within each classification subject to furlough in the following fashion. All unprotected employees – all AA employees hired after 3/1/2001 and all former TWA employees – shall be placed on the list in reverse seniority order as determined by their occupational seniority under the Seniority Integration Opinion and Award. For former TWA employees their occupational seniority for placement on the list shall be the occupational seniority they are exercising at their location at the time the juniority list is constructed, i.e, – 100% of TWA seniority, or 25% of TWA seniority, or 4/10/2001, depending on location. The AA employees hired after 3/1/2001 shall be blended with the former TWA employees according to the AA employees' occupational seniority.

(Brief in Support of Defendant AA's Motion for Summary Judgment, Exhibit B, DRC ruling No. 5). Defendant AA contends that DRC ruling No. 5 makes clear that occupational seniority for former TWA employees varies between locations and an employee transferring from a 100% location to a 25% location does not retain his 100% 'exit' seniority but rather is adjusted to the 'entrance' seniority of the 25% location.

Plaintiff contends, however, that DRC No. 19 supports his position that an employee at a 100% station uses this 'exit' seniority when bumping the system even when he is bumping to a 25% station. Specifically, Plaintiff points to the language of DRC No. 19 which provides:

> In determining whether [an employee] facing a layoff has the requisite seniority to 'bump the system', his occupational seniority is calculated based upon the city he is being laid off from (so-called 'exit' seniority) or the city he is attempting to bump into (so-called 'entrance' seniority). While it is not an easy question to resolve, calculating bumping rights based upon entrance seniority cannot be totally reconciled with the DRC's carrier rulings or with the collective bargaining agreement.
>
> In [DRC No. 5], issued on August 31, 2002, the DRC reached the following conclusions:
>
> [see DRC No. 5 above]
>
> In light of the above, the DRC finds no rationale for denying a junior employee the right to use the full or partial occupational seniority provided under the Seniority integration Opinion and Award to bump the system and displace an unprotected junior employee. These employees' options are determined based upon the seniority provided in the Seniority Integration Opinion and Award.
>
> Moreover, as both sides have noted, the DRC cannot change the agreement, and the alternative, that is, determining system bumping rights based on entrance seniority, appears to contradict the collective bargaining agreement. The agreement provides the right to displace the employee with the 'least' system seniority. If bumping rights were based on entrance seniority, former TWA employees could (at least until April 10, 2003) bump only into cities where TWA seniority is recognized. The result would inevitably be that such employees would not be bumping the least senior protected employee, but rather the least senior employee in those selected cities where TWA seniority is recognized.

-10-

> In other words, if the DRC relied upon 'entrance seniority' to determine bumping rights, the ultimate result would be that the person laid off would not be the least senior unprotected employee.
>
> Accordingly, it is the DRC's finding in the instant case that the two former TWA employees laid off in St. Louis have the right to bump using their 'exit' seniority.

(Plaintiff's Exhibit 6, attached to Answer to Motion to Dismiss, DRC No. 19). In light of the plain language of DRC No. 19, which indicates that exit seniority prevails over entrance seniority in the case of system transfers, the Court is convinced that there are genuine issues of material fact as to whether Defendant AA breached the CBA by failing to allow Plaintiff the use of his 'exit' seniority when transferring from St. Louis to Detroit.  Accordingly, this Court recommends that Defendant AA's Motion for Summary Judgment be **DENIED** as to Plaintiff's claim that Defendant AA breached the CBA by failing to properly calculate his seniority under Kasher's Award and subsequent DRC rulings.

Having concluded that Defendant AA's Motion for Summary Judgment should be denied, the Court must now determine whether Plaintiff can withstand Defendant TWU's Motion to Dismiss and for Summary Judgment as to Plaintiff's claim that TWU failed to fairly represent him.  A breach of the duty to fairly represent occurs when a union's conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171 (1967).  Defendant TWU asserts that this claim must fail because TWU relied in good faith on Barnard's Award to conclusively establish that AA did not breach the CBA.  Plaintiff suggests, however, that TWU's actions were not only arbitrary but also motivated by bad faith.

Here, the facts are unclear surrounding TWU's decision to present Clover's arbitration to Barnard instead of Kasher.  Plaintiff also points out that TWU previously attempted to set aside Kasher's subsequent DRC rulings in a case brought in the Eastern District of New York. *See Local 501, Air Transport Division, TWU of America v. American Airlines*, 02-5453.  There, TWU asked the court to set

aside Kasher's supplemental DRC rulings and argued that Kasher exceeded his authority and contractual jurisdiction and that he submitted his own interpretations over the express language of the contract. The court rejected TWU's assertions and dismissed the action on summary judgment. TWU's previous suit complaining of Kasher's decisions strongly suggests that TWU may have disliked Kasher's rulings and therefore sought a 'second-opinion' from arbitrator Barnard. Plaintiff has sought, but has been denied, discovery on these issues which discovery may tend to prove Plaintiff's allegations that Defendant TWU acted arbitrarily and in bad faith in its representation of the former TWA employees. Given Plaintiff's outstanding discovery requests and pending motion to compel, TWU's Motion to Dismiss and for Summary Judgment is premature at this time. *See Vance v. United States,* 90 F.3d 1145 (6th Cir. 1996). Accordingly, the Court recommends that Defendant TWU's Motion to Dismiss and for Summary Judgment be **DENIED**.

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Dated:  October 03, 2005                         s/ MONA K. MAJZOUB
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 03, 2005                          s/ Lisa C. Bartlett
                                                 Courtroom Deputy