UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MARCUCILLI,

       Plaintiff,

v.                                                                                                 Case No. 04-40244
                                                                                                      Hon. Sean F. Cox

AMERICAN AIRLINES, INC., et al.,

       Defendants.
_____

**OPINION AND ORDER**

This matter is before the Court on Defendant American Airlines and Defendant Transport Workers Union of America's Motions for Summary Judgment. Both parties fully briefed the issues and a hearing was held February 22, 2007. For the following reasons, the Court **GRANTS** Defendant American Airlines, Inc.'s Motion for Summary Judgment and **GRANTS** Defendant Transport Workers Union of America's Motion for Summary Judgment.

    **I.    BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of the alleged failure to properly calculate Plaintiff's seniority, brought pursuant to the Railway Labor Act ("RLA"), 45 USC §151, *et seq*.

The underlying facts are sufficiently set forth in Judge Gadola's Order entered March 31, 2006, as follows:

> Plaintiff was a Transworld Airlines ("TWA") employee for 23 years until AA acquired all of TWA's assets on April 10, 2001. As a result of the acquisition, Plaintiff became an employee of AA, was no longer represented by the International Association of Machinists, and gained representation by [local union Transport Workers Union Local 521, and the national organization of the

1

union, Transport Workers Union of America-Air Transport (collectively "TWU")], who represented AA employees and served as their collective bargaining agent.  Due to the acquisition of TWA by AA, the parties submitted to arbitration the issue of seniority integration of former TWA employees becoming new AA employees.  On April 29, 2002, the arbitrator, Richard Kashner [sic], issued an award ("Award") which addressed the "Integration of Seniority Lists" between TWA and AA employees.  The Award also called for the formation of a Dispute Resolution Committee ("DRC") that would hear and resolve disputes concerning the implementation and proper interpretation of the Award.  Kashner, by an agreement of the parties, was made the DRC, even though he is an individual.  Under the Award, an employee's seniority varied depending on the employment location.  For example, an employee at the St. Louis station would receive 100 percent of their TWA seniority whereas an employee at the Detroit or New York Station would receive only 25 percent, while still other TWA employees at certain other cities would receive a seniority based on a start date of April 10, 2001, the date AA acquired TWA.

      Plaintiff was an employee at the St. Louis facility which, according to the Award, received a 100 percent seniority designation.  Due to a reduction in the work force at the St. Louis station, Plaintiff opted to transfer to the Detroit station, which was designated a 25 percent seniority station.  When Plaintiff transferred, instead of retaining 100 percent of his seniority as did the employees who remained at the St. Louis station, Plaintiff's seniority was reduced to 25 percent.  Plaintiff contends that pursuant to the Award, he should retain 100 percent of his seniority.  Defendant AA disagrees, arguing that Plaintiff is not entitled to retain 100 percent of his seniority, but that his seniority should be adjusted downward to 25 percent.

      In December 2003, Plaintiff filed a grievance disputing AA's interpretation of the Award reducing his TWA seniority.  After that grievance was denied by AA and Plaintiff had exhausted the administrative grievance appeals process, Plaintiff petitioned his union, TWU, to arbitrate his grievance.  TWU declined to pursue Plaintiff's request for further arbitration.

      During this time, a case involving an employee named Mark Clover in a situation similar to Plaintiff's was proceeding before an arbitrator named John Barnard.  Like Plaintiff, Clover worked at the St. Louis station where he would have retained 100 percent of his seniority, and opted to relocate to the New York station, which was a 25 percent seniority station.  Clover argued that he should retain 100 percent of his seniority.  The arbitrator Barnard eventually ruled that because of his transfer to New York, Clover could not retain the benefit of the St. Louis station's 100 percent seniority designation but, instead, that Clover retained only the 25 percent seniority designation of the New York station.  In his

responses to Defendants' motions to dismiss, Plaintiff argues that the Barnard decision is not binding because the parties have agreed that all future questions of interpretation of the Award would be determined by the DRC, and therefore this seniority question cannot be considered by Barnard. Subsequent to TWU declining to pursue Plaintiff's grievance, Plaintiff filed this case in federal court.

Plaintiff filed a pro se Complaint on August 24, 2004 alleging violations of the collective bargaining agreement ("CBA") on behalf of himself and similarly situated AA employees.[1] Plaintiff subsequently retained counsel.

On April 8, 2005, AA filed a motion for summary judgment. AA alleged that the court does not have jurisdiction because this is a "minor" dispute arising out of grievances and/or the interpretation of the CBA. AA also asserted that the Barnard decision was controlling and disposed of Plaintiff's claim. TWU filed a motion to dismiss or for summary judgment on May 2, 2005. TWU argued that it acted in good faith when it relied on the Barnard decision to establish that AA did not violate the CBA. Both motions were referred to Magistrate Judge Mona Majzoub. Judge Majzoub issued a Report and Recommendation ("R&R") recommending that both motions be denied and discovery continue. Defendants objected to the R&R.

On March 31, 2006, Judge Gadola issued an Order regarding Defendants' objections to the R&R. Judge Gadola affirmed Judge Majzoub's R&R, finding that the Court had jurisdiction because Plaintiff alleged a hybrid action involving a claim against AA for breach of the CBA, and a claim against TWU for breach of the duty of fair representation. Judge Gadola also found there were genuine issues of material fact regarding whether AA breached the CBA. Additionally, Judge Gadola ruled that there is a genuine issue of material fact regarding whether

---

[1] Plaintiff was granted a motion to amend his Complaint on March 31, 2006, in order to properly state a class action. Plaintiff has yet to file an amended Complaint.

TWU breached its duty of fair representation stemming from a letter by TWU Local 521 stating that it would review Plaintiff's grievance after the Barnard decision. Judge Gadola held:

> Because this Court finds that genuine issues of material fact exist as to whether AA breached the CBA by its calculation of seniority and whether TWU acted arbitrarily or in bad faith by declining to pursue Plaintiff's grievance, the Court denies Defendants' motions to dismiss and for summary judgment. The Magistrate Judge has granted Plaintiff the opportunity for additional discovery in these matters. Upon close of this additional discovery, Defendants may refile motions for summary judgment if they so desire.

[Doc. 86, p.7].

TWU refiled a Motion for summary judgment on April 30, 2006. AA refiled a Motion for summary judgment on November 8, 2006.

On November 27, 2006, the DRC issued a "Notice of Award" finding that Plaintiff's claim that he is entitled to exercise 100% seniority at the Detroit station is without merit, and that AA properly implemented the original Kasher Award. [DRC Ruling #28]. Plaintiff filed a pro se response to the Notice of Award.

However, before Plaintiff filed Responses to Defendants' Motions for summary judgment, on December 27, 2006 counsel for Plaintiff, Lynn Shecter, filed a motion to withdraw as counsel. The Court held a hearing on Ms. Shecter's Motion on January 17, 2007. At the hearing, the Court agreed to accept Plaintiff's pro se Responses to Defendants' Motions for summary judgment. Ms. Shecter agreed to remain available for consultation with Plaintiff pending resolution of the instant Motions for summary judgment. Ms. Shecter was present at the hearing.

On January 18, 2007, AA filed a letter including supplemental authority to which Plaintiff responded. Defendants filed Replies to Plaintiff's Responses on February 1, 2007. On February

4

6, 2007, Plaintiff submitted a letter explaining the significance of some of his exhibits submitted with his Responses. Defendants did not respond. The Court reviewed all of these documents.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.   ANALYSIS

Defendants contend that the Court does not have jurisdiction under the RLA to adjudicate Plaintiff's claims. Disputes subject to the RLA fall in two classifications, "major disputes" and "minor disputes." *Airline Professionals Association v. ABX Air, Inc.*, 400 F.3d 411, 413-414 (6th Cir. 2005). Major disputes involve the formation of collective bargaining agreements or efforts to secure them; minor disputes can be resolved by interpreting the terms of the collective bargaining agreement. *Id*. "[M]ajor disputes seek to create contractual rights; minor disputes seek to enforce them." *Id*. at 414. The burden is not heavy to demonstrate that a dispute is

minor. *Id*. This case involves a minor dispute because Plaintiff seeks to ensure proper implementation of an alleged contractual right, *i.e.* the seniority integration award and the CBA.

Exclusive jurisdiction of minor disputes is in the hands of the Adjustment Board pursuant to the RLA. *Kaschak v. Consolidated Rail Corporation*, 707 F.2d 902, 905 (6th Cir. 1983); and 45 USC §152. An employee may not forego resort to the Adjustment Board and have the matter presented to the federal court. *Id*.

There is an exception to the exclusive jurisdiction of the Board when a plaintiff presents a hybrid claim under §301 of the Labor Management Relations Act ("LMRA"). To prevail on a hybrid claim, Plaintiff must satisfy two prongs. *Roeder v. American Postal Wrokers Union*, 180 F.3d 733, 737 (6th Cir. 1999). First, Plaintiff must demonstrate that reducing his seniority in accordance with the seniority integration agreement breached the CBA; and second, Plaintiff must establish that in representing him during the grievance process, TWU breached its duty of fair representation. *Id*. "To determine if the CBA was breached, we look to the plain meaning of the agreement." *Id*. "To determine if the Union breached its duty of fair representation, we ask whether the Union's conduct in representing [Plaintiff] was arbitrary, discriminatory, or in bad faith." *Id*. "Mere negligence on the part of a union does not satisfy this requirement...[f]or liability to attach, a union's conduct must be so far outside a wide range of reasonableness as to be irrational." *Id*. (citations omitted). "[A] union's failure to exhaust every possible remedy requested by a member facing disciplinary action does not subject the union to liability." *Id*. at 737-738.

AA also argues the Plaintiff must establish collusion or conspiracy between the employer and the union in order to maintain a hybrid claim. AA does not offer any binding authority

holding that evidence of collusion or conspiracy is a necessary element to a hybrid claim. The Sixth Circuit precedent only identifies two prongs: (1) breach of the CBA; and (2) breach of the duty of fair representation. *Roeder, supra*; see also *Musto v. Transport Workers Union of America*, 339 F.Supp.2d 456, 471 (E.D.N.Y. 2004)(relying on *Vaca v. Sipes*, 386 U.S. 171, 185 (1967))("several courts in this circuit have held that hybrid suits are an exception to the exhaustion requirement and that a showing of collusion between union and employer is not necessary"). The Court declines to grant judgment as a matter of law on the basis that Plaintiff fails to present evidence of collusion or conspiracy between AA and TWU.

      A.      **Does Plaintiff Establish a Breach of the CBA?**

Plaintiff alleges that AA breached the CBA when it reduced his seniority from 100% to 25% upon his transfer to Detroit. Plaintiff claims that AA improperly implemented the Kasher Award. It is undisputed that the Kasher Award, and any subsequent rulings interpreting it, cannot modify the CBA. [AA's Motion, Exhibit F, p.4]. Plaintiff argues that AA's implementation of the Kasher Award as allowing a reduction in a former TWA employee's seniority upon transfer to a station with a lower seniority designation several years after the integration is a breach of the CBA. AA denies that the reduction in seniority breaches the CBA. To support its interpretation, AA relies on the "adverse impact" clause of the CBA:

> (f) Merger, Purchase, or Acquisition of Another Company: In the event of a merger, purchase, or acquisition of another company, involving that entire company or a substantial portion of that company, by the Company, the TWU and the Company will meet to discuss the merger, purchase, or acquisition. The Company will provide the TWU with information concerning the proposed merger, purchase, or acquisition at the earliest feasible time to allow for the Union to prepare for those discussions. Those discussions will include the impact of the merger, purchase, or acquisition upon the TWU represented employees.

> (1) The integration of the seniority lists of the respective employee groups will be governed by the provisions of Sections 3 &13 of Allegheny-Mohawk, 59 CAB 22 (1972), **provided that no employee on the master seniority list will be adversely impacted in rates of pay, hours, or working conditions by the integration**.

[AA Motion, Exhibit D](emphasis added). AA asserts that to allow a former TWA employee to exercise 100% seniority obtained as part of the integration, at a station designated as 25% or 4-10-01 by the same integration, would violate the adverse impact clause because it would negatively impact original AA employees. Plaintiff argues that the adverse impact clause only applied at the time of the integration, not permanently. [Plaintiff's Response, p.10]. Plaintiff contends that the reduction of his seniority subsequent to the integration violates other sections of the CBA that provide an employee retains his seniority upon transfer. AA notes that Plaintiff's interpretation is fundamentally unfair because it would allow him to "leapfrog" other former TWA employees at the Detroit station who have more actual years worked but are stuck with the 25% seniority designation solely because of the station they worked at when the integration occurred.

Essentially, Plaintiff disagrees with the scope AA gives to the adverse impact clause. Plaintiff contends that the prohibited "adverse impact" refers only to the impact at the time of the integration - anything that happens subsequent is not covered by the adverse impact clause. Defendants disagree with Plaintiff's interpretation and assert that the clause provides that there should not be an adverse impact on the original AA employees at any time as a result of the integration.

The scope of the adverse impact clause was a catalyst for the Seniority Integration Arbitration Agreement in the first place. The dispute was a minor dispute, involving contract

interpretation. Accordingly, at the time of the acquisition, when AA, TWU, and IAM were unable to come to a resolution regarding seniority integration, particularly in light of the adverse impact clause, the issue was submitted to Kasher. The Seniority Integration Arbitration Agreement defining the scope of the arbitration stated that the arbitration would be conducted pursuant to Article 1(e) of the Fleet Service Employees Collective Bargaining Agreement, *i.e.*, the Allegheny-Mohawk standards and the adverse impact clause. Kasher articulated the question before him as "[h]ow the system seniority lists of each of the respective employee groups shall be integrated for purposes of occupational seniority in light of the applicable provisions of the AA-TWU collective bargaining agreements?" [AA's Motion, Exhibit F, p.3].

The Kasher Award indicated how the seniority should be integrated. The Kasher Award established the three designations of seniority relative to TWA's contributions to AA as a result of the acquisition. Plaintiff does not argue that the Kasher Award is invalid. Rather, Plaintiff argues that the Kasher Award did not specifically address whether seniority should be reduced based on a transfer to a lower seniority station.

The Kasher Award provided that any disputes arising out of the Award were to be resolved by the DRC. The parties to the arbitration agreed that Kasher would act as the DRC. Acting as the DRC, Kasher issued DRC #5 and DRC #19, which Plaintiff interpreted as supporting his position. [TWU's Motion, Exhibits A and B]. Defendants deny that DRC #5 and #19 support Plaintiff's position. Kasher also issued DRC #24 on November 17, 2004, which was adverse to Plaintiff's position. On November 27, 2006, Kasher put to rest any dispute about the interpretation of his original award and subsequent rulings when, acting as the DRC, he issued DRC #28.

9

In DRC #28, Plaintiff's claim was submitted for resolution. Kasher cited Judge Gadola's March 31, 2006 ruling that "the Court recognizes that nothing prohibits the parties from obtaining an interpretation from the DRC, and that since the parties have agreed that the DRC has the ability to interpret the Kashner [sic] Award, any decision by the DRC might affect the hybrid claim proceedings in this Court." [Doc. 86, pp.8-9]. DRC #28 stated that the Original Kasher Award, and the subsequent rulings cited by Plaintiff "did not grant Mr. Marcucilli the unrestricted right he now seeks." [Doc. 98, p.33]. Kasher ruled that Plaintiff was not entitled to exercise 100% seniority at the Detroit station and that AA properly implemented the Original and Supplemental Awards. *Id*. at 34.

Plaintiff asks the Court to find DRC #24 and DRC #28 inapplicable and not binding. In a recent decision, the Sixth Circuit overruled its previous precedent and articulated a new standard for determining whether judicial review of an arbitration award is appropriate. *Michigan Family Resources, Inc. v. Service Employees International*, 475 F.3d 746 (6th Cir. 2007). The standard provided by the court is:

> Did the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator 'arguably construing or applying the contract?' So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute.

*Id*. at 752-753. The court also noted that this inquiry "no doubt will permit only the most egregious awards to be vacated. *Id*. at 753. Additionally, the court cited Supreme Court precedent that "**the federal courts' review of labor-arbitration decisions is not just limited, it**

10

**is very limited**." *Id*. at 752 (citations omitted)(emphasis added).

The parties do not dispute that the CBA permitted the seniority integration issue to be submitted to Kasher for arbitration. In addition, no one challenges that disputes regarding the Kasher Award were to be resolved by the DRC. The parties to the arbitration agreed that Kasher would serve as the DRC. There is no evidence that suggests fraud, a conflict of interest or dishonesty affected Kasher's decision with respect to DRC Rulings #24 and #28. Instead, Plaintiff argues that based on his interpretation, the DRC rulings are not consistent with Kasher's original Award. Inconsistency with prior rulings is not sufficient to overrule an arbitration award.

The only remaining issue is whether Kasher was "arguably construing" the CBA when he issued DRC Rulings #24 and #28. It is clear from a reading of the Rulings that Kasher was relying on the terms of the CBA for his decision. DRC #24 discusses how to reconcile CBA Article 15 with a reduction in force involving the three seniority designations for former TWA employees. [Plaintiff's Response, Exhibit 28]. DRC #28 interprets the Original Kasher Award, which relied on the CBA and specifically the "adverse impact" clause. [Doc. 98, Exhibit A]. The fact that there is contractual silence requiring Kasher to resolve an ambiguity does not invalidate the award. *Michigan Family Resources*, 475 F.3d at 755. Moreover, even if the interpretation arrived at by Kasher is in error, he does not exceed his authority such that the award is not binding. *Id*. at 756. There is no evidence in the record to support overruling DRC #24 or DRC #28.

Because the contractual dispute was properly submitted to arbitration; the arbitrator issued an opinion that was found to be properly implemented by AA; and the DRC specifically

11

ruled that Plaintiff's claim has no merit; Plaintiff fails to establish a breach of the CBA by AA.

### B. Does Plaintiff Establish a Breach of the Duty of Fair Representation?

The Court cannot exercise jurisdiction over a hybrid claim unless Plaintiff establishes both a breach of the CBA by AA and a breach of the duty of fair representation by TWU. "Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters and Helpers v. Terry*, 494 U.S. 558, 564 (1990). When the employer cannot be held liable for breach of the collective bargaining agreement, the union cannot be held liable for unfair representation as part of a hybrid claim. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 930 F.2d 505, 510 (6th Cir. 1991).

Because Plaintiff fails to establish a breach of the CBA, the Court does not reach his claim of a breach of the duty of fair representation. Accordingly, Plaintiff's §301 hybrid claim is dismissed for lack of jurisdiction.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant American Airlines, Inc.'s Motion for Summary Judgment and **GRANTS** Defendant Transport Workers Union of America's Motion for Summary Judgment.

>S/Sean F. Cox
>Sean F. Cox
>United States District Judge

Dated: March 7, 2007

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MARCUCILLI,

    Plaintiff,

v.    Case No. 04-40244
    Hon. Sean F. Cox

AMERICAN AIRLINES, INC., et al.,

    Defendants.

_____

PROOF OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 7, 2007, by electronic means and by First Class mail upon:

Mark Marcucilli
24885 Westpointe
Brownstown, MI 48183

    S/J. Hernandez
    Case Manager